# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN N. BRUNWASSER, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-00385 |
| | ) | Judge Nora Barry Fischer |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## Memorandum Opinion

### I. Introduction

Plaintiff Allen N. Brunwasser ("Plaintiff") brought this cause of action against the United States of America[1] ("the Government") regarding the disposition of $1,782.00 in interest allegedly due on a certain U.S. Treasury bill. (Docket No. 44). Specifically, Plaintiff, the owner of numerous U.S. Treasury bills, alleges that the Government failed to send him a reinvestment notice regarding one of his Treasury bills in breach of its contractual obligations with him. (Docket No. 44 at 5). Plaintiff asserts that the Government's breach caused a delay in his Treasury bill reinvestment; hence, depriving him of one-month's interest on the bill in the amount of $1,782.00. (Docket No. 44 at 3-4). Presently before the Court is the Government's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 47) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Based on the following, the Government's Motion is GRANTED IN PART and DENIED IN PART.

### II. Procedural Background

---

[1] Plaintiff's Complaint originally named the Bureau of Public Debt as the sole Defendant. However, on December 17, 2007, Plaintiff filed a motion titled "Motion to Declare United States has been Automatically Substituted for Deft as a Matter of Law and Fact or, if this is Denied to Order United States Substituted for Deft Bureau of Public Debt" (Docket No. 35), which, based on a lack of an objection by the Defendant, (*see* Docket No. 36), the Court granted on January 10, 2008, substituting the United States of America for the Bureau of Public Debt as the sole defendant in this matter (*see* Docket No. 37).

Plaintiff originally filed the instant action in the Court of Common Pleas of Allegheny County, Pennsylvania, Case No. GD-07-003811. (Docket No. 1). The United States subsequently removed the case pursuant to 28 U.S.C. §§ 1442 and 1446. (*Id.*). The facts alleged and the procedural history of this case through March 17, 2008 have been discussed in the Court's earlier Memorandum Opinion and Order on the Government's Motion to Dismiss Plaintiff's Complaint (Docket No. 12), *Brunwasser v. United States*, Civ. A. No. 07-385, 2008 U.S. Dist. LEXIS 21030 (W.D. Pa. Mar. 17, 2008); (*see also* Docket No. 41). In that Opinion, the Court granted the Government's motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacked jurisdiction under 28 U.S.C. § 1352 and 28 U.S.C. § 1346(b)(1), the Federal Tort Claims Act. Additionally, the Court granted Plaintiff's Motion for Leave to Amend (Docket No. 35) his original Complaint (Docket No. 1-2) in order to add the correct jurisdictional authority, the Little Tucker Act, found at 28 U.S.C. §1346(a)(2). (Docket No. 41 at 14). Thereafter, the Court ordered Plaintiff to file his Amended Complaint on or before April 17, 2008. (Docket No. 43).

On April 14, 2008, Plaintiff filed a Motion for Reconsideration (Docket No. 42) of the Court's Memorandum Opinion and Order (Docket No. 41), which, based on Plaintiff's arguments in said motion, the Court interpreted as a motion for an extension of time in which to file a motion for reconsideration and/or leave to file an amended complaint. Plaintiff's Motion was granted, extending the filing due date for his Amended Complaint or Motion for Reconsideration to May 27, 2008. (Docket No. 43). On May 12, 2008, Plaintiff filed his Amended Complaint. (Docket No. 44). In response, on June 27, 2008, the Government filed a Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support thereof. (Docket Nos. 47 and 48). In turn, on August 7, 2008, Plaintiff filed a Motion to Strike Defendant's Exhibits

C and B[2] (Docket No. 50), which the Government attached to its Motion to Dismiss. On September 2, 2008, the Government filed its Response to Plaintiff's Motion to Strike arguing that the exhibits were properly before the Court on its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docket No. 56 at 3).

Thereafter, on September 4, 2008, the Court denied Plaintiff's Motion to Strike Exhibits C and B, finding that when a party factually challenges subject matter jurisdiction, a court may rely upon evidence such as that which is contained in the disputed exhibits. (Docket No. 57). However, on September 18, 2008, Plaintiff filed a Motion to Vacate (Docket No. 58) the Court's September 4, 2008 Order, arguing that the Court "sua sponte overruled the previous orders" regarding the same exhibits. Plaintiff then filed his Response to the Government's Motion to Dismiss, titled "Statement of Questions and of Law," on September 23, 2008.[3] (Docket No. 59). The Government then filed its Response to Plaintiff's Motion to Vacate on October 2, 2008. (Docket No. 63). On October 14, 2008, the Court denied Plaintiff's Motion to Vacate, ruling that

---

[2] Defendant's Exhibit B is a declaration of Margaret H. Carozza, a GS-14 Policy and Program Analyst for the Bureau of Public Debt. (Docket No. 48-3). Exhibit C consists of a copy of a broadcast system email regarding the sending of reinvest direct notices, sent by Jim Nelson, a Generalist for Treasury Services. (Docket No. 48-4).

[3] On September 24, 2008, the Court ordered a settlement conference to be held on Monday, October 6, 2008 at 1:00 p.m. (Docket No. 60). In said Order, the Court further ordered counsel and the parties, including principals for the United States, to attend in person and to be prepared to discuss settlement. (*Id.*). On September 26, 2008, upon a Motion to Continue the Settlement Conference (Docket No. 61) made by the government, the Court re-scheduled the settlement conference for November 3, 2008 at 3:00 p.m. (Docket No. 62). The settlement conference was held as scheduled; however, the case was not able to be resolved. (*See* Docket No. 67). Moreover, Plaintiff has taken issue with the Government's good faith at said conference, arguing that counsel did not have requisite authority and no representative of the Government aside of counsel appeared. (Docket No. 68). In response, the Government states that this assertion is inaccurate, frivolous, and, thus, Plaintiff's objection is wholly unfounded. (Docket No. 73). On December 2, 2008, upon consideration of Plaintiff's objection, construed as a request to amend the Court's minute entry for the conference, the Court denied said request because Plaintiff neither requested any relief nor filed the appropriate proposed order or proposed minute entry. (Docket No. 74). On December 5, 2008, Plaintiff filed a "Motion for Discovery to Clarify the Record and Make Certain and Make Relevant Facts Certain and Beyond Dispute." (Docket No. 75). The Government's response to this motion is due on or before December 19, 2008.

Plaintiff's motion, which sought reconsideration of its September 4, 2008 Order, failed to raise new evidence or manifest injustice. (Docket No. 65).

Currently pending before the Court is the Government's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 47), and Plaintiff's response thereto (Docket No. 59). As the motion has been fully briefed, it is now ripe for disposition.

### III. Review of Plaintiff's Allegations in his Amended Complaint

In short, Plaintiff claims that the Government breached a contract with him for a particular Treasury bill issued by the Bureau of Public Debt. (Docket No. 44 at 1). A review of the individual paragraphs contained in the Amended Complaint reveals that many of Plaintiff's averments are no more than conclusions of law or to the extent they plead facts, they are conclusory in nature.[4] After consideration of the Amended Complaint, the Court gleans the following factual background.

Plaintiff claims that the Government published the treasury direct investor kit (the "kit"), in effect at the time when the circumstances presented by Plaintiff occurred, in order to "clearly and specifically advise all treasury bill investors…of its contract obligations."[5] (*Id.* at 3). He consistently refers to the kit as a "circular,"[6] identified as P.D.F. 009. (*Id.*). The kit provides that about 45 days before a security is to mature, a reinvestment notice will be sent to investors with instructions for reinvestment and a validation number needed to reinvest. (*Id.* at 3; Docket

---

[4] Even though Plaintiff is proceeding pro se, he is a licensed attorney. Hence, the Court need not hold him to less stringent standards. *McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3d Cir. 1996).

[5] The kit (Docket No. 48-2) is a document issued by the Bureau of Public Debt which provides investors with additional information to help them manage their investment held in the Legacy Treasury Direct System. (Docket No. 48-3 at ¶¶ 4, 7). It is made available to the public through the Treasury's website at www.treasurydirect.gov.

[6] In the Code of Federal Regulations, a "circular" is defined as a "publication issued by each Federal Reserve Bank that sets forth the terms and conditions under which the Reserve bank maintains Book-entry Securities accounts and transfers Book-entry Securities." 31C.F.R. § 357.2. The regulations generally refer to circulars in the context of "operating" or "offering" circulars pursuant to which Treasury securities are sold. *See* 31 C.F.R. 356.1, 357.10, 356.4. The parties dispute whether the kit is a circular, and thus, encompassed in the express contract.

No. 48-2 at 17). It further states that to schedule a reinvestment, upon receipt of the mailed reinvestment notice, an investor may use a variety of options. (Docket No. 44 at 1; Docket No. 48-2 at 17-18). Plaintiff references 31 C.F.R. § 356.11(d)(1),[7] which advises security investors that a maturing security may be invested through the same methods by which it was first invested. (Docket No. 44 at 4). The kit and the regulations, Plaintiff contends, were intended by the Government to be part of "its renewal and 'rollover' mandates and options." (*Id.*). Plaintiff also claims that he relied upon the kit and the regulations governing marketable securities as part of the contract. (*Id.*). In particular, he relied on the Government's alleged promise, contained in these documents (including the kit), to send him the "required renewal notice" so that he could timely reinvest his Treasury bill by telephone, one of the available methods for reinvestment. (*Id.*). However, in direct breach of the contract, Plaintiff maintains that the Government did not send the "mandated" reinvestment notice for his Treasury bill. (*Id.* at 5). If the notice had been sent, Plaintiff would have reinvested his bill for a new term. (*Id.*). Instead, Plaintiff was unaware his bill was about to mature because, he claims, the notice was not sent. (*Id.*). As a direct result, in breach of the contract comprised of the kit and the regulations, Plaintiff lost $1,782.00 in interest the bill would have earned it if had been reinvested before maturity. (*Id.*).

**IV.     Discussion**

As set forth above, the United States has moved to dismiss Plaintiff's claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a movant invokes multiples bases in support of a motion to dismiss, the court should consider the Rule 12(b)(1) challenge first

---

[7] Part 356.11(d)(1) provides: "If you are a submitter and the awarded securities are to be issued in Legacy Treasury Direct, you may submit bids by using one of our approved methods, e.g., computer, automated telephone service, or paper forms. You may also reinvest the proceeds of maturing securities into new securities through the same methods." 31 C.F.R. § 356.11(d)(1).

because all other defenses will become moot if the court must dismiss the complaint for lack of subject matter jurisdiction. *See In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993). Accordingly, the Court will first consider the Government's challenge to this Court's subject matter jurisdiction pursuant to Rule 12(b)(1).

### A.     *Rule 12(b)(1) Analysis*

#### 1.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the lack of subject matter jurisdiction over a plaintiff's claims. *See* FED. R. CIV. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortenson v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977)). As it is the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Development Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995); *see also Kehr Packages, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991), *cert. denied*, 501 U.S. 1222 (1991) ("[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion"). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

##### a.     Facial Attack

A facial attack challenges the sufficiency of the pleadings, and the court must accept the plaintiff's allegations as true. *Id.* When a defendant attacks a complaint on its face, he "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of

action." *Mullen v. Thompson*, 155 F.Supp.2d 448, 451 (W.D. Pa. 2001). Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr*, 926 F.2d at 1409 (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)).

b.      *Factual Attack*

When a defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 (quoting *Mortenson*, 549 F.2d at 891). In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

2.      Application of Standard to Plaintiff's Amended Complaint

a.      *Overview of Arguments*

The Government challenges Plaintiff's assertion of subject matter jurisdiction under 28 U.S.C. § 1346(a), the Little Tucker Act, for his breach of contract claim. (Docket No. 47). The Government contends that because the terms of the United States' contract with Plaintiff do not include an express obligation to send the disputed reinvestment notice to Plaintiff, the Little Tucker Act does not apply. (Docket No. 48 at 2). Plaintiff argues, however, that there is such an obligation. (Docket No. 59 at 16-17). Specifically, Plaintiff argues that during the twenty years in which he has invested in Treasury bills, he has routinely received reinvestment notices for all of his bills, reminding him to reinvest before they matured. (Docket No. 59 at 1-2). In addition to arguing that an express contract existed, Plaintiff argues that the Government's course of

7

conduct and his reliance thereon created an implied in fact contract for these continuously mailed notices, as they are described in the kit sent to investors. (Docket No. 59 at 11).[8] Therefore, the Court will analyze whether it has subject matter jurisdiction pursuant to the Little Tucker Act under the alternative theories of an express and implied in fact contract.

### b.  *Little Tucker Act*

As this Court previously stated, *see Brunwasser*, 2008 U.S. Dist. LEXIS 21030 (*see also* Docket No. 41), and states again, in order to determine whether the Little Tucker Act applies to this litigation, the Court must first analyze the scope and application of this Act. The Little Tucker Act provides:

> Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

---

[8] The Court notes that in its briefs, the Government fails to respond to Plaintiff's argument that it was required to send a notice under the theory of an implied in fact contract. The Government solely relies on its assertion that the express contract for the Treasury bill did not obligate the Bureau to send reinvestment notices. However, the Government does provide evidence attached to its motion that, contrary to Plaintiff's claim, it sent a reinvestment notice to Plaintiff for the Treasury bill at issue. (Docket No. 48-4).

28 U.S.C. § 1346(a)(2).  The Little Tucker Act is one of the few federal statutes that provides both jurisdiction and a waiver of sovereign immunity for contract actions against the United States, while also providing recourse in the Court of Federal Claims.  *Licta v. United States Postal* Serv., 33 F.3d 259, 263 (3d Cir. 1994).  Indeed, the aptly named "Big" Tucker Act grants jurisdiction to render judgment upon any claim of contract, express or implied, against the Untied States for claims exceeding $10,000 in value, 28 U.S.C. § 1491(a)(1) (Supp. IV 1992), while the Little Tucker Act grants concurrent jurisdiction to the district courts and the Court of Federal Claims for such claims not exceeding $10,000 in value.  28 U.S.C. § 1346 (a)(2)(1988).

### c. *Requirements for Jurisdiction under the Little Tucker Act*

As noted, contracts that fall within the Little Tucker Act may be express or implied in fact.  28 U.S.C. § 1346 (a)(2); *see also Hercules Inc. v. United States*, 516 U.S. 417, 423 (1995).  The government's assent to be sued is indirectly manifested in the case of an express or implied in fact contract.  *Hercules*, 516 U.S. at 423.  However, an implied in law contract is not the equivalent because it creates a contractual obligation in the absence of the intention to be bound.  *Id.*  To permit a suit to go forward on such a contract detracts from the principle that the United States cannot be sued without its consent and that the consent must be express.  *Steward Sand & Material Co. v. Southeast State Bank*, 318 F.Supp. 870, 874 (D.C. Mo. 1970).

#### i. Express Contract

It is well established that to prove an express contract, the party alleging that a contract existed must show that there was an offer, an acceptance, and consideration between the parties.  *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 645 (3d Cir. 1998).  Additionally, a party alleging an express contract with the United States must show the requisite

authorization by an agent with the authority to bind the United States. *Gardiner*, 145 F.3d at 645.

### ii. Implied in Fact Contract

A contract or agreement implied in fact is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules Incorp. v. United States*, 516 U.S. 417, 424 (1996) (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597 (1923)). In order for a party to prevail on an implied in fact theory, they must establish that there was an implied agreement to provide the obligation alleged. *Hercules*, 516 U.S. at 424. Among the considerations to determine whether such a contract existed is the parties' conduct, as well as the course of dealings and the corresponding intentions that may be legitimately inferred therefrom. *In re Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987); 1 S. WILLISTON ON CONTRACTS § 3 (3d ed. 1957). An implied in fact contract arises not from a mutual agreement and intent, but where the agreement has not been verbally expressed. *In re Penn*, 831 F.2d at 1228. The elements necessary to form an implied in fact contract are identical to those required for an express agreement. *Id.* That is, the terms "express" and "implied" do not reference different kinds of contract, but rather the evidence by which the parties demonstrate their agreement. *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (citation omitted).

### iii. Identical Express and Implied in Fact Contracts Cannot Coexist

If there is an express contract, there cannot be an implied in fact contract that covers the same subject matter. *Baer*, 392 F.3d at 616-17 (citing *In re Penn*, 831 F.2d at 1229-30; and *Klebe v. United States*, 263 U.S. 188, 191-92 (1923)); *Feldman v. Google, Inc.*, 513 F.Supp.2d

229, 236 (E.D. Pa. 2007). That is, the theories of express contract and implied in fact contract are mutually exclusive. *Baer*, 392 F.3d at 617. However, the existence of an express contract between the parties does not preclude the existence of an implied contract if the implied contract is distinct from the express one. *Baer*, 392 F.3d at 617 (citing *Atlas Corp. v. United States*, 895 F.2d 745, 754-44 (Fed. Cir. 1990)). These two types of contracts may coexist only if the terms are different in some form. *Baer*, 392 F.3d at 617. In other words, the implied contract must be entirely unrelated to the express contract. *Id.*

                iv.      Additional Requirements under the Little Tucker Act

Because the Little Tucker Act is merely a jurisdictional waiver of sovereign immunity, a litigant is required to identify a separate substantive right for money damages against the United States apart from the Act itself. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004); and *United States v. Mitchell*, 463 U.S. 206, 216 (1983). Therefore, in order for the Little Tucker Act to apply to a breach of contract claim, a plaintiff must allege a claim for money damages based upon either an express or implied in fact contract that falls within the ambit of the Act.

                d.      *Review of Allegations as to Express & Implied in Fact Contract Claims*

As the Court construes the Amended Complaint, Plaintiff seems to be pleading not only a breach of an express contract, but also a breach of an implied in fact contract.[9] Plaintiff is correct in stating in his Amended Complaint that both parties have agreed that the Treasury bill represents a contract between the parties. (Docket No. 44 at 1). The statutes, regulations and

---

[9] To the extent that the Amended Complaint could be seen as a claim based on the negligence of the Government, the gist of the action doctrine bars such a claim. *See Hospicomm v. Fleet Bank, N.A.*, 338 F.Supp.2d 578, 582 (E.D. Pa. 2004) (the gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort"); *see also Tier1 Innovation, LLC v. Expert Tech Group, LP*, Civ. A. No. 06-4622, 2007 U.S. Dist. LEXIS 34135, at *2 (E.D. Pa. May 8, 2007) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.3 (3d Cir. 2002)(the gist of the action doctrine prevents plaintiffs from recovering on a separate tort claim which simply restates a claim for breach of contract)).

circulars governing marketable securities constitute the written agreement and furthermore set forth the scope of the terms of the contract. (*Id.* at 1-2).

For the proposition that an implied in fact contract exists, Plaintiff claims that the kit, which describes the reinvestment procedures and the only available options for reinvesting, created an obligation for the Government to send a reinvestment notice. (Docket No. 48-2 at 18). Additionally, Plaintiff points out that the mailed reinvestment notice included instructions on how to properly make a reinvestment, the amount of the maturing security, and the date by which an investor needed to reinvest a security. (Docket No. 48-2 at 17-18). Thus, Plaintiff claims, he relied on these notices and the pattern of dealing between the parties in order to timely and properly renew his securities. (Docket No. 44 at 4). When the Government failed to send the notice, it breached its implied duty. (*Id.* at 5). As such, Plaintiff did not know this particular bill was about to mature, directly resulting in $1,782.00 lost in interest. (*Id.*).

i. Express Contract Claim

As previously stated, it has been agreed by the parties that the Treasury bill represents a contract between Plaintiff and the United States. (*See* Docket No. 28 at 1; Docket No. 48 at 4; Docket No. 64 at 3; Docket No. 44 at 1). Moreover, the Government has pointed out that the "statutes, regulations, and circulars governing marketable securities such as a Treasury bill constitute a contract between the purchaser of the security and the United States, and furthermore, set forth the scope and terms of such contract." (Docket No. 48 at 6 (citing *United States v. Dauphin Deposit Trust Co.*, 50 F.Supp. 73, 76 (M.D. Pa. 1943); *Wolak v. United States*, 366 F.Supp. 1106 (D.Conn. 1973); and *Estate of Watson, et al v. Blumenthal*, 586 F.2d 925, 929

(1978))).[10] The crux of the Government's argument is that none of the above documents include a requirement that it send Plaintiff a reinvestment notice. (Docket No. 48 at 6). The Government further argues that the kit, an "educational document" sent to investors, is not part of the contract according to the Code of Federal Regulations and thus, cannot serve as a basis for jurisdiction.[11] (Docket No. 48 at 9-11; Docket No. 48 at 9, 11; United States' Exhibit B, Docket No. 48-3 at 1). The kit, according to the Government, was only sent to investors "to help them manage" their securities and as a "courtesy." (Docket No. 48 at 10-11; Docket No. 48-3 at 2).[12] To the contrary, Plaintiff relies on the kit for his assertion that the express contract included an obligation to provide reinvestment notices. (*See* Docket No. 59 at 4).

It is evident to this Court that there is an express contract between the parties for the Treasury bill at issue. As discussed above, both parties agree on this point. (Docket No. 28 at 1; Docket No. 48 at 4, Docket No. 64 at 3; Docket No. 44 at 1). On the face of these allegations, such express contract falls within the ambit of the Little Tucker Act given Plaintiff's claim in the amount of $1,782.00. However, the Government argues that jurisdiction is lacking because the scope of the express contract does not include the disputed obligation to send a reinvestment notice. (Docket No. 64 at 3). For the following reasons, the Court finds that the express contract does not include an obligation to send a reinvestment notice. Thus, there has been no breach of the express contract, and, therefore, jurisdiction over such breach is lacking.

---

[10] The Court notes that these cases supporting the argument that the scope of express contract did not include the disputed obligation cited by the Government in its Brief in Support of Motion to Dismiss (Docket No. 48) and its Reply Brief in Support (Docket No. 64) predate the published kit sent to investors.

[11] The regulations that control and provide the terms for Treasury bill contracts are found in 31. C.F.R. parts 356, "Sale and Issue of Marketable Book-Entry Treasury Bills, Notes, and Bonds (Department of the Treasury Circular, Public Debt Series No. 1-93)," and 357, "Regulations Governing Book-Entry Treasury Bonds, Notes and Bills Held in Legacy Treasury Direct." 31 C.F.R. Part 356 provides the terms and conditions for the sale and issue of Treasury bills, such as the one at issue here. 31. C.F.R. Part 257, on the other hand, governs Treasury bills held in the Legacy Treasury Direct book-entry system.

[12] If the Government did not intend for the kit to be more than an "educational document," it could have included language in the kit to that effect. *Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 162 (3d Cir. 2002) (ambiguity in a contract is construed against the drafter).

It is well established that the Treasury of the Secretary prescribes the conditions for the issuance of Treasury bills and the procedure to be followed in offering them for sale. *See* 31 U.S.C. §§ 3104 and 3121. As discussed earlier, the statutes, regulations, and circulars governing the Treasury bill at issue constitute the express contract between the parties. The applicable governing provisions of the Code of Federal Regulations, 31 C.F.R. §§ 356 and 357, do not discuss nor even mention the kit or the reinvestment notices. Specifically, 31 C.F.R. § 357 states that an investor is to be provided with a statement of account when there is a change in that investor's portfolio, such as when a security is purchased or when it matures. 31. C.F.R. § 357.20(f). The regulations do provide for reinvestment upon the request of an owner; however, nothing in the statutes or regulations discuss reinvestment notices or the requirement that one be sent. *See* 31 C.FR. § 357.27 (providing that reinvestment at maturity may be made in same form as registration at the request of an owner and must be made in accordance with the terms prescribed in the tender form submitted at time of original purchase or by subsequent transaction request received not less than ten (10) business days prior to maturity). The regulations also provide the methods available for investment and reinvestment, however, by their terms, they do not require that the Bureau send reinvestment notices. *See* 31 C.F.R. § 356.11(d)(1) (providing how an investor may reinvest maturing securities.).

The Court now addresses whether the kit is part of the express contract. The governing statutes and regulations, discussed in detail above, do not discuss nor even mention the kit. In fact, the version of the kit relied on by the Plaintiff was revised and republished on August 31, 2004, before the Treasury bill at issue matured. Additionally, the regulations governing the Treasury bill became effective before the kit was published. *See* 31 C.F.R. § 306.0.

Plaintiff argues that the kit is a circular and hence, part of the express contract between him and the Government. In this Court's estimation, the kit does not constitute a "circular," as defined by the regulations. While it is a publication, it was not issued by the Federal Reserve Bank itself nor does it meet the regulatory definition of a circular. 31 C.F.R. §§ 356.1, 357.10, and 356.4. Traditionally, circulars are referred in the regulations as being either "operating" or "offering" circulars, controlling the issuance of securities. *Id.* The kit does not control how a security is issued; rather, it was published by Treasury Direct[13] with the purposes of keeping investors informed on their securities and how to manage them electronically. (Docket No. 48-2 at 3). Based on the foregoing, the Court finds that the terms of the express contract do not include an obligation to send a reinvestment notice. Accordingly, this Court lacks jurisdiction under the Little Tucker Act for Plaintiff's express contract claim.

ii. Implied In Fact Contract

The allegations of Plaintiff's Amended Complaint and his arguments suggest that an implied in fact contract existed on the basis that the kit[14] and the Government's and his course of conduct created a separate implied obligation to send the reinvestment notice. (Docket No. 44 at 4-5; Docket No. 59 at 3, 9, 11, and 17; Docket No. 48-2). Specifically, Plaintiff claims that the kit was published in order to advise all investors of the Government's obligations and that he relied on this "contract" to receive the reinvestment notice. (Docket No. 44 at 3). Plaintiff alleges that the lost interest was caused by the Government's "breach of its contract, regulations, and [the kit's] obligation to send" the reinvestment notice. (*Id.* at 5). Thus, Plaintiff

---

[13] Treasury Direct is "a service that lets you buy Treasury securities and hold them electronically in accounts with the U.S. Treasury." (Docket No. 48-2 at 3). It is one of several investment services offered by the U.S. Treasury through the Bureau of Public Debt. (*Id.*).

[14] The kit states that an investor may reinvest a security before its maturity only after the reinvestment notice is received and an investor will need the validation number contained in that form. (Docket No. 48-2 at 17). Investors have two electronic options to reinvest, by completing a request online or calling the toll free number. (*Id.* at 18). The kit indicates that an investor is to follow the instructions on the reinvestment notice. (*Id.*).

alternatively argues that this Court has jurisdiction pursuant to the Little Tucker Act under an implied in fact contract theory. As noted, the Court construes this allegation of the Amended Complaint to include both a breach of express contract theory as well as implied contract theory based on a course of dealing and the kit.[15]

The kit, made available to Plaintiff and to the world through the Treasury's website at www.treasurydirect.gov, delineates the only options by which securities can be reinvested. (Docket No. 48-2 at 17-18). It informs investors that reinvestment notices will be sent before a bill matures and will provide a validation number needed for reinvestment. (Docket No. 48-2 at 17-18). An investor cannot reinvest without this number. (*Id.*). Plaintiff relied upon these notices and the provided for validation numbers to reinvest by telephone. Thus, a pattern of dealing arose between the Government and Plaintiff by virtue of his reliance upon the kit's specifications and the directions for reinvestment in the mailed notices. This pattern of dealing leads one to infer that the Government intended the implied promise, or contract, to send these notices. *See Bowen v. Income Producing Mgmt.*, 202 F.3d 1282, 1289-90 (10th Cir. 2000)(implied contract may result from a consistent pattern or practice); *Christo v. Ramada Inns, Inc.*, 609 F.2d 1058, 1061 (3d Cir. 1979)(jury could find the formation of an implied in fact contract based on evidence of a course of conduct). Because the Government maintains and the Court has found that the express contract does not encompass the kit because it is not a circular, the implied in fact contract is distinct from the express contract. *In re Penn*, 831 F.2d at 1229-30.

When the Government allegedly failed to send the notice, it allegedly breached the implied contract created by the kit and course of dealing. (Docket No. 44 at 4). In this Court's estimation, these allegations are sufficient in demonstrating the existence and breach of an

---

[15] *See* discussion *supra* at pages 11-12.

implied agreement for the receipt of reinvestment notices. *In re Penn*, 831 F.2d at 1228; *Hercules*, 516 U.S. at 424. Therefore, this Court finds Plaintiff has sufficiently pled the breach of an implied in fact contract seeking $1,782.00 which satisfies the jurisdictional requirements of the Little Tucker Act and he should be permitted to pursue this claim through discovery.

### B. *Rule 12(b)(6) Analysis*

The Court now turns to the Government's argument for dismissal under Federal Rule of Civil Procedure 12(b)(6).

#### 1. Legal Standard

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, – U.S.–, 127 S.Ct. 1955 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Twombly*, 127 S.Ct. at 1974). While *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly,* a claim for relief 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1965. Therefore, in order to satisfy the requirement of Federal Rule of Civil Procedure 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level." *Ayers v. Osram Slyvania, Inc.*, Civ. A. No. 07-1780, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965).

In considering a Rule 12(b)(6) motion, a district court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving

party. *Umland v. Planco Fin. Servs.*, Civ. A. No. 06-4688, 2008 U.S. App. LEXIS 19225, at *10 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a district court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The failure-to-state-a-claim standard of Rule 12(b)(6) seeks to promote judicial economy by eliminating unwarranted discovery and factfinding. *United States ex. rel. Repko v. Guthrie Clinic, P.C.*, 557 F.Supp.2d 522, 525 (M.D. Pa. 2008). Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch.,* Inc., 522 F.3d 315 (3d Cir. 2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008); citing *Twombly*, 127 S.Ct. at 1965). In addressing the instant motion, the Court is mindful of the above standard.

      2.      Discussion

Here, the Government argues that Plaintiff's claim for breach of contract as set forth in the Amended Complaint (Docket No. 44) fails because the United States, through the Bureau of the Public Debt, was not required to send Plaintiff a reinvestment notice. (Docket No. 48 at 12). Thus, it argues, his claim should be dismissed in its entirety for failure to state a claim upon which relief may be granted. (*Id.*). In response, Plaintiff argues that the contract, the statutes, regulations, and circulars governing Treasury bills, as well as the kit (Docket No. 52-2), created

a requirement that the government to send him a notice that his bill was about to mature. (Docket No. 59 at 2-3).[16]

As discussed above, the Government does not dispute the existence of an express contract. The Court has also found that the terms of the express agreement were not violated by the Government's alleged failure to send a reinvestment notice, as there is no such obligation under that express agreement. Therefore, Plaintiff's claim under the express contract fails as a matter of law under Federal Rule of Civil Procedure 12(b)(6). However, Plaintiff has sufficiently pled a breach of an implied contract as created by the use of the kit and the parties' course of dealing. Furthermore, because Plaintiff has not had an opportunity to conduct discovery on the question of whether an obligation to send a reinvestment notice is established by the kit and whether such a notice was indeed sent, as claimed by the United States (*see* Docket No. 48 at 12; Docket No. 48-4) and denied by Plaintiff (Docket No. 66-1-2), the Court will permit Plaintiff's claim to go forward through discovery.[17] Through discovery, the terms of the implied in fact contract can be probed to determine whether they include the requirement to send a reinvestment notice.

Based on the facts before the Court at this time, Plaintiff's breach of the implied in fact contract claim has been pled sufficiently to set forth a plausible claim against the Government. *Twombly*, 127 S.Ct. at 1965. Therefore, the Government's Motion to Dismiss Plaintiff's

---

[16] In evaluating this 12(b)(6) motion, the Court's analysis is limited to the discussion of whether Plaintiff has sufficiently stated a breach of contract claim regarding the Government's purported duty to send a reinvestment notice. *Union Tank Car Co. v. Aerojet-General Corp., et al.*, Civ. A. No. 05-C-2095, 2005 U.S. Dist. LEXIS 21751, at *11 (N.D. Il. Sept. 27, 2005). A motion brought under Rule 12(b)(6) challenges the sufficiency of the pleadings, specifically, whether the plaintiff has averred enough facts to raise the right to relief above the speculative level. *Twombly*, 127 S.Ct. at 1965. Furthermore, any documents attached to the pleadings cannot be considered at this stage without converting the motion to dismiss into a motion for summary judgment. *See* FED. R. CIV. P. 12(d).

[17] The Court notes that the only evidence provided by the Government that the notice was sent was a system broadcast email sent by James Nelson, Generalist for Treasury Services. (Docket No. 48-4). The Government did not provide any evidence as to the procedures for these mailings or who handles them.

Amended Complaint (Docket No. 47) pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

**V. Conclusion**

Accordingly, based on the foregoing, the Government's Motion to Dismiss Plaintiff's Amended Complaint [47] is **DENIED IN PART and GRANTED IN PART**. The Government's motion is granted to the extent that it seeks dismissal of Plaintiff's claim for breach of an express contract pursuant to Federal Rule of Civil Procedure 12(b)(1), as this Court lacks jurisdiction over said claim. It is denied to the extent that it seeks dismissal of Plaintiff's claim for breach of an implied contract pursuant to Rules 12(b)(1) and 12(b)(6). An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: Allen N. Brunwasser
        All Counsel of Record.
Date: December 11, 2008.